UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN SCAVO,

        Plaintiff,

v.                                       Case No. 2:20-cv-675-NPM

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

## OPINION AND ORDER

Plaintiff John Scavo seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 21), [1] and the parties filed a joint memorandum (Doc. 29). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

## I.    Eligibility for Benefits and the Administration's Decision

### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

_____

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B.    Factual and procedural history

On October 3, 2017, Scavo applied for supplemental security income benefits. (Tr. 21, 28). Scavo's alleged onset date is the same, and his alleged impairments included frequent diarrhea, abdominal pain, night sweats, and fatigue. (Tr. 21, 28, 207, 285). As of the filing of Scavo's application, he was 51 years old. (Tr. 27).

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

Scavo has some college education, and his past relevant work experience includes work as a shipping and receiving supervisor. (Tr. 27, 45).

On behalf of the administration, a state agency[5] denied Scavo's application initially on February 28, 2018, and upon reconsideration on May 3, 2018. (Tr. 15, 106, 113). At Scavo's request, Administrative Law Judge (ALJ) Eric Anschuetz held a hearing on May 9, 2019, to assess the merits of Scavo's application. (Tr. 19, 34-85).

On July 17, 2019, the ALJ issued an unfavorable decision finding Scavo not disabled from October 3, 2017 (the application date), through the date of the decision. (Tr. 28). Scavo's timely request for review by the administration's Appeals Council was denied. (Tr. 1-6). Scavo then brought the matter to this court, and the case is ripe for judicial review.[6] The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 20).

## C.    The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a).

[6] Scavo had a prior application that was heard by a separate ALJ while he was imprisoned. (Tr. 55, 87-99). The ALJ in the previous matter also issued an unfavorable decision for Scavo on June 16, 2014, which he did not appeal. This previous matter is not before the court today.

> impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 416.1400. Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 416.912 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Scavo had not engaged in substantial gainful activity since October 3, 2017, the date Scavo filed his application. (Tr. 21). [7] At step two, the ALJ characterized Scavo's severe impairments as HIV+, diarrhea secondary to HIV, and anxiety disorder. (Tr. 21).[8]

---

[7] Scavo worked after his disability benefits application was filed. However, this work activity did not rise to the level of substantial gainful activity. His earnings record shows $338.00 in wages for the third quarter of 2018 and $2,172.00 in wages for the fourth quarter of 2018 (Tr. 254). During his testimony, Scavo offered that he still engages in "intermittent[]" work activity (Tr. 40).

[8] Notably, the term "severe" in a social-security-disability analysis differs from its use in common parlance. The claimant's burden at this stage of the analysis is "mild," and an "impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir.

At step three, the ALJ determined Scavo did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 20).

As a predicate to step four, the ALJ arrived at the following RFC:

[T]he claimant maintains the following residual functional capacity: lift and/or carry 20 pounds occasionally and 10 pounds frequently. Stand and/or walk 6 hours of an 8-hour workday. Sit 6 hours of an 8-hour workday. Frequently climb ladders and scaffolds, but never climb ropes. Unlimited ability to climb ramps and stairs. Frequently balance, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to environmental extremes of heat, cold, and humidity. Limited to simple, routine, repetitive tasks. His work space must be in close proximity to a rest room in case he suddenly has an unexpected need to use it.

(Tr. 24).

Scavo has past relevant work as a shipping and receiving supervisor (DOT #222.137-030, light, SVP 6). (Tr. 27). However, the functional requirements of this work exceed Scavo's RFC, and therefore, he is unable to perform it. As such, the vocational expert testified that an individual of Scavo's age, education, work

---

1986)). In other words, non-severe impairments are "slight" or "trivial" abnormalities. *Id*. And the distinction between a severe and non-severe impairment rests not on common perceptions, but on whether the impairment significantly limits a work-related activity. *See Smith v. Comm'r of Soc. Sec.*, 501 F. App'x 875, 878 (11th Cir. 2012) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). Thus, even when diagnosed and prescribed medications for anxiety and depression—which, in a lay sense, could fairly be considered severe—such impairments are not severe in the social-security-disability context when they don't interfere with any work-related abilities. *Smith*, 601 F. App'x at 879. But when they do have effects on work-related abilities, they are, for purposes of the five-step analysis, severe. *See Schink*, 935 F.3d at 1268. This is not to say that non-severe impairments are ignored; either standing alone or in combination with other impairments they may limit work-related abilities. Consequently, when formulating an RFC, an ALJ must account for both severe and non-severe impairments. *See* 20 C.F.R. § 404.1545(a)(2).

experience, and RFC would be able to perform the requirements of the following representative occupations:

- electronics worker (DOT #726.687-010, light, SVP 2, 70,000 jobs nationally);
- small product assembly (DOT #739.687-030, light, SVP 2, 120,000 jobs nationally); and
- production assembler (DOT #706.687-010, light, SVP 2, 200,000 jobs nationally).

(Tr. 28).[9]

Consequently, the ALJ concluded Scavo was not under a disability from October 3, 2017, through the date of the decision, July 17, 2019. (Tr. 29).

## II.   Analysis

The issue on appeal is whether substantial evidence supports the ALJ's assessment of the intensity and persistence of Scavo's diarrhea and its effect on his ability to work.

### A.   Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127,

---

[9] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.      Whether substantial evidence support the ALJ's assessment of the intensity and persistence of Scavo's diarrhea.**

In 2001, Scavo was diagnosed with HIV. (Doc. 29, p. 4). He later developed colitis secondary to toxoplasmosis; and thereafter, had a colon resection which exacerbated his existing diarrhea condition. *Id.* As of the filing of his application, Scavo had "constant loose stools that are sometimes painful" and require him to run to the bathroom three to four times per day, depending on what he eats or drinks. *Id.* Scavo's other alleged symptoms include perianal discomfort, diarrhea, and rectal bleeding. *Id.*

Scavo argues the RFC (which states "[h]is work space must be in close proximity to a rest room in case he suddenly has an unexpected need to use it"), does not properly take into account all of his limitations. Pointing to his testimony, Scavo suggests that his diarrhea would cause him to be off task ten percent or more of the workday and, as acknowledged by the vocational expert, this would preclude employment. (Tr. 79).

As such, the question presented is whether substantial evidence supports the ALJ's implicit assessment that Scavo would not be off task ten percent or more of the workday; that is, that the intensity and persistence of Scavo's diarrhea is not as disabling as Scavo claims. *See* 20 C.F.R. § 416.929(c)(2); *see also* SSR 16-3p; *cf. Colbert v. Comm'r of Soc. Sec*, No. 6:19-cv-2176-LRH, 2021 WL 1103692, *8-10 (M.D. Fla. Mar. 23, 2021) (affirming denial of benefits ***even though*** the claimant

had to use a colostomy bag).

Multiple physical examinations in the medical evidence of record show that Scavo displayed limited to no physical abnormalities, beyond the diarrhea in question, during the relevant time period. (Tr. 560-561, 566-567, 576-579). Further, Scavo has disclaimed any medically proscribed diet, and reports drinking several cups of coffee and 1-2 alcoholic beverages per day. (Tr. 560 (Scavo "[d]rinks 1-2 alcoholic drinks a day); Tr. 562 (Scavo's "chronic diarrhea [is] prob[ably] due to [a] shortened colon and too much coffee.")). Additionally, a practitioner prescribing medication to Scavo for his diarrhea secondary to HIV stated that with new medication Scavo "will feel so much better that he will be able to work." (Tr. 560). Indeed, the practitioner's medical notes state that this new medicine "helped" Scavo. (Tr. 586).

Furthermore, Scavo reported to Dr. Rosenberg and the McGregor Clinic that his activities of daily living include cooking, cleaning, doing laundry, watching TV, listening to the radio, and yard work such as moving the lawn. (*See e.g.*, Tr. 577, 586). ***After*** his alleged onset date, Scavo actively sought and engaged in gainful work activity. (Tr. 62, 254). Viewing the evidence as a whole, the court therefore finds the ALJ's decision is based on substantial evidence. *Compton v. Astrue*, 8:07-cv-489-T-EAJ, 2008 WL 344494 *2, 5 (M.D. Fla. Feb. 7, 2008) (finding "the ALJ thoroughly discussed Plaintiff's medical documentation of her diarrhea" and "[t]he

record before the ALJ contains substantial evidence to support a denial of benefits."); *Young v. Comm'r of Soc. Sec*, 6:14-cv-223-Orl-DAB, 2015 WL 509639, *9 (M.D. Fla. Feb. 5, 2015) (stating "[t]he ALJ's decision that Plaintiff was not disabled was based on substantial evidence, *i.e.*, the lack of diarrhea problems in the medical records, as well as Plaintiff's [prior] attempts to look for work.").

Even if the court would have reached a contrary result as the finder of fact or were to find that the record evidence "preponderates against" the agency's decision, this would not justify a reversal. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)). Consequently, the ALJ's decision must be affirmed.

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, the court finds substantial evidence supports the ALJ's decision and there was no error. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** on March 30, 2022.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE